UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NAJEE STRATTON AND TYISHA STRATTON,<br><br>   Plaintiffs,<br><br> v.<br><br>CITY OF VINELAND; DETECTIVE GAMALIEL "GAMI" CRUZ; POLICE CHIEF TIMOTHY CODISPOTI; JOHN DOES 1-10; AND JANE DOES 1-10,<br><br>   Defendants. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 12-05997 (JEI/JS)<br><br>**OPINION** |

**APPEARANCES:**

BEGELMAN ORLOW & MELLETZ
By: Paul R. Melletz, Esq.
411 Route 70 East, Suite 245
Cherry Hill, New Jersey, 08034
 Counsel for Plaintiffs

BARRETT AND PAVLUK, LLC
By: Judson B. Barret, Esq.
1200 Eagle Avenue, Suite 204
Ocean, New Jersey 07712
 Counsel for Defendants City of Vineland & Police Chief
 Timothy Codispoti

THE MACMAIN LAW GROUP, LLC
By: Brian H. Leinhauser, Esq.
  Charles R. Starnes, Esq.
101 Lindenwood Drive, Suite 160
Malvern, PA 19355
 Counsel for Detective Gamaliel "Gami" Cruz


**IRENAS**, Senior District Judge:

 Plaintiffs Najee and Tyisha Stratton brought this civil rights action against the City of Vineland, Vineland's Police

1

Chief Timothy Codispoti, and Detective Gamliel Cruz based Mr. Stratton's arrest and prosecution, and the manner in which Vineland police officers detained Mrs. Stratton while executing a search warrant on Plaintiffs' shared home.  Mr. Stratton has since voluntarily dismissed his own claims and only Mrs. Stratton's claims remain.

Currently pending before the Court are Defendants' motions for summary judgment on Tyisha Stratton's claims.[1]  For the reasons explained herein, Defendant Cruz's motion will be **DENIED** and Defendants City of Vineland and Codispoti's motion will be **GRANTED in part and DENIED in part**.

## I.   FACTS

On the night of September 29, 2010, Defendant Detective Gamaliel Cruz, along with other Vineland police officers, executed a search warrant for Plaintiffs' shared residence in the City of Vineland, New Jersey.  (Def. Cruz's Statement of Relevant Undisputed Facts ("D.S.F.") ¶ 13)  The officers suspected that Mr. Stratton, who had been arrested earlier that night at a different location, used the residence to keep the proceeds from drug sales.  (Cruz Search Warrant Aff. ¶ 7)  There is no indication from the police reports or search warrant

---

[1] Defendant Cruz obtained his own counsel and filed his own motion for summary judgment.  Defendants Codispoti and City of Vineland filed a separate motion for summary judgment but signed on to Cruz's statement of undisputed facts.

2

application that the police believed Mrs. Stratton to be involved in any illegal activity.

While conducting their search of the residence, the officers came upon Mrs. Stratton in her bedroom in a partially nude state – apparently topless. The officers prevented Mrs. Stratton from dressing for some period of time while conducting a sweep of the bedroom to ensure no one else was present. Cruz spent this time at her side trying to calm her down. The officers then let Mrs. Stratton put on a tank-top, took her out of the bedroom, placed her in handcuffs, and sat her on her living room couch while the officers searched the rest of the home. Neither party disputes these basic facts. However, the parties agree on little else regarding the incident.

First, it is unclear how many and which officers were present during the sweep of Mrs. Stratton's bedroom. According to Mrs. Stratton, four or five officers entered her room with flashlights on and guns "up." (Stratton Dep. at 22:1-18) Cruz's police report of the incident states that Cruz responded to the location with Detectives Paul Shadinger, Misael Candelario, and Gary Mollik. (Cruz Rpt. at 2, Ex. 7 to Cruz's Motion)  In his deposition, Cruz testified that only he and Detective Shadinger initially entered the residence. Candelario stated in his deposition that he remembers entering the apartment with Cruz. (Candelario Dep. at 23:12-14; 26:22-27:1)

3

Second, the parties dispute how long the officers forced Ms. Stratton to remain partially nude. During her deposition, Mrs. Stratton initially testified that it took 15 minutes, but later conceded that she did not know the exact time frame because she was scared and "out of it." (Stratton Dep. at 59:20-60:4) She agreed with Defense counsel's statement that "in the heat of that moment every second probably felt like a minute" and that "it could have been just a minute or two." (Id. at 60:5-8; 62:25-63:8) She testified that, during this period of time, the officers looked in her closet but did not search through any drawers or under the bed. (Id. at 92:17-93:3) According to Cruz, Mrs. Stratton remained partially nude for only 30 seconds. (Cruz Dep. at 22:18-23:9)

During his deposition, Detective Candelario stated that he had not received any specific training or instructions regarding what actions to take upon encountering a nude female when executing a search warrant. (Candelario Dep. at 35:12-36:4) He said that officers learned to handle that type of situation "on-the-job." (Id.) Defendants have not disputed this testimony.

Plaintiffs filed their Complaint against Detective Cruz, Police Chief Codispoti and the Vineland Police Department on September 24, 2012.[2] In Counts VI, VII, and VIII, respectively,

---

[2] Plaintiffs also named numerous "John Doe" defendants but never amended their Complaint so as to identify any additional individuals.

Mrs. Stratton asserts claims against (1) Defendant Cruz for conspiracy to violate her civil rights, (2) Defendant Codispoti, in his official capacity, for supervisory liability, and (3) the City of Vineland for municipal liability.

## II.  Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted if "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In deciding a motion for summary judgment, the court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A fact is material only if it will affect the outcome of a lawsuit under the applicable law, and a dispute of a material fact is genuine if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party.  *See Anderson*, 477 U.S. at 252.

The nonmoving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial."

*Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted). The court's role in deciding the merits of a summary judgment motion is to determine whether there is a genuine issue for trial, not to determine the credibility of the evidence or the truth of the matter. *Id.* at 249.

### III. Analysis

Due to genuine disputes of material fact related to Cruz's conduct during the search of Mrs. Stratton's residence, the Court will deny the motions for summary judgment as to Mrs. Stratton's claims against Detective Cruz and the City of Vineland. The Court will grant Defendant Codispoti's motion for summary judgment and dismiss Count VII of the Complaint.

### A. Claim Against Defendant Cruz

"[P]olice officers who, acting under color of state law, violate an individual's federal constitutional or statutory rights are subject to liability under § 1983." *Curley v. Klem*, 298 F.3d 271, 277 (3d Cir. 2002).

Mrs. Stratton, couching her claim against Defendant Cruz as a civil rights conspiracy, alleges that Cruz and other Vineland officers held her captive in a nude state so as to cause a "significant deprivation of liberty." (Compl. ¶¶ 56-57) The

Court reads her claim, albeit inartfully drafted, as a § 1983 claim against Cruz for infringing on Mrs. Stratton's Fourth Amendment right to be free from unreasonable seizures.

The relevant issue in this case is not whether the officers were permitted to keep Mrs. Stratton partially nude, but whether they kept her in that vulnerable position for an unreasonably long period of time.[3]  The Supreme Court has made clear that, "[i]n executing a search warrant, officers may take [objectively] reasonable action to secure the premises and to ensure the safety and the efficacy of the search."  *L.A. Cnty., Cal. v. Rettele*, 550 U.S. 609, 614 (2007).  In *Retelle*, such "reasonable action" included keeping a naked couple from dressing while the officers took two minutes to secure that couple's bedroom.  The Supreme Court noted, however, that plaintiffs in that case had not alleged that their detention was prolonged or that the officers prevented plaintiffs from dressing longer than necessary to ensure everyone's safety, which might have rendered the search unreasonable.  *Id.* at 615.

Unlike the plaintiffs in *Rettele*, Mrs. Stratton has alleged that Cruz detained her for longer than necessary, and there is a genuine dispute as to the length of time she remained undressed

---

[3] During oral argument, Plaintiff also suggested that Cruz's initial entry into the residence (allegedly without knocking) and handcuffing of Mrs. Stratton also constituted § 1983 violations.  The Court rejects these claims, as Mrs. Stratton failed to raise them in her Complaint.

7

while the officers swept her bedroom.  Though her memory of the incident is understandably fuzzy, Mrs. Stratton testified that it could have taken as long as 15 minutes.[4]  Cruz said it took 30 seconds.  At this stage, construing all facts and making all inferences in Mrs. Stratton's favor, the Court assumes that Mrs. Stratton remained nude for 15 minutes as four or five male police officers searched her bedroom.  Further, Mr. Stratton had already been arrested earlier that evening and Mrs. Stratton was not suspected of any illegal activity.  A reasonable jury could find on this record that Cruz prevented her from dressing for an unreasonable amount of time, which violated Mrs. Stratton's constitutional right to be free from unreasonable seizures.

Having found there to be evidence supporting an underlying Fourth Amendment violation, the Court turns to whether Defendant Cruz would be entitled to qualified immunity.  "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (internal quotations omitted).  A right is

---

[4] Defendants ask the Court to disregard that estimation due to Mrs. Stratton's later statement that it could have been only a minute or two.  The Court will not do so.  It does not surprise the Court that Mrs. Stratton cannot remember the exact passage of time after suddenly encountering numerous armed male officers while she stood partially nude.  A jury, not the Court, should determine the timing issue.

clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001)

Here, a jury could conclude on this record that no reasonable officer in Cruz's position would believe that it was necessary to keep Mrs. Stratton partially nude for 15 minutes. With four or five officers present, ensuring that no other individuals were in the room should have taken just a few seconds. If Mrs. Stratton's version of the events are true, Defendant Cruz would not be entitled to qualified immunity.

### B. Municipal Liability Claims

In Counts VII and VIII of the Complaint, Mrs. Stratton asserts § 1983 claims against Police Chief Timothy Codispoti, in his official capacity only, and the City of Vineland for policies or customs responsible for the constitutional violation Plaintiff alleges she suffered. (Compl. at 14-16) Since Mrs. Stratton's claim against Codispoti is, in effect, a redundant claim against the municipality, the Court will dismiss Count VII. *See Cordial v. Atlantic City*, No. 1:11-cv-01457 (RMB/AMD), 2014 WL 1095584, at *9 (D.N.J. March 19, 2014) ("A suit against the Chief of Police in his official capacity is really a claim against the police department and, in turn, the municipality.").

However, the Court will deny Defendant City of Vineland's motion for summary judgment on Count VIII of the Complaint,

9

which rests on Vineland's alleged failure to train its officers on how to handle nude or partially nude individuals encountered when executing a search warrant.

A municipality may be liable under § 1983 "when the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  That policy or custom "may relate to the training of police officers." *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001).  For a plaintiff to succeed on a failure to train claim, the lack of training must amount to "deliberate indifference to the rights of the persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

To prove "deliberate indifference," a plaintiff must show that "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999) (citing *Walker v. City of New York,* 974 F.2d 293, 297–298 (2d Cir. 1992)).  Finally, plaintiff must prove that the alleged constitutional violation

would have been avoided had the employee been trained under a program that was not deficient. *Canton*, 489 U.S. at 391.

Here, the City of Vineland must have known that officers are bound to encounter individuals in sensitive positions such as the one in which Mrs. Stratton found herself, especially when officers execute search warrants early in the morning (as in *Rettele*) or late at night (as occurred here). In addition, the wrong choice by an officer in such situations, i.e. keeping an individual undressed longer than necessary, would invariably cause a deprivation of constitutional rights.

Although "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference," the Supreme Court has "left open the possibility that, 'in a narrow range of circumstances' . . . the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations."[5] *Connick v. Thompson*, 131 S. Ct. 1350, 1360-61 (2011).

Here, Detective Candelario testified that the Vineland Police Department did not provide *any* specific training or instruction on how to handle a situation where officers

---

[5] In *Canton*, the Court used the example of officers obviously needing training on the constitutional limits of the use of deadly force when city policymakers know that the officers will be required to arrest fleeing felons and that these officers carry firearms, in part, to accomplish that task. 489 U.S. at 390 n. 10.

11

encounter a nude suspect or individual when conducting a search. (Candelario Dep. at 35:19-36:7)  The City of Vineland does not dispute this testimony.  On this record, a reasonable jury could find it objectively obvious that Vineland should have trained its officers not to keep any individual from dressing any longer than necessary to ensure officer safety.  A reasonable jury could also conclude that Cruz would not have kept Mrs. Stratton from dressing for so long had he received such training.

    For these reasons, the Court will deny Defendant City of Vineland's motion for summary judgment on Mrs. Stratton's municipal liability claim.

### IV. Conclusion

    For the reasons set forth above, Defendant Cruz's Motion for Summary Judgment will be **DENIED**.  Defendants Codispoti and the City of Vineland's Motion for Summary Judgment will be **GRANTED** as to Mrs. Stratton's claim against Codispoti (Count VII), but **DENIED** as to her claim against the City of Vineland (Count VIII).  An appropriate Order accompanies this Opinion.

Date: May 27, 2015

                                        s/ Joseph E. Irenas
                                      **JOSEPH E. IRENAS, S.U.S.D.J.**